# EXHIBIT 2

 Ethicon
Endo-Surgery

Ethicon Endo-Surgery, Inc.
a Johnson & Johnson company
4545 Creek Road
Cincinnati, OH 45242

PERSONAL & CONFIDENTIAL

July 12, 2011

ENDOEVOLUTION, LLC
51 Middlesex Street, Suite 104
North Chelmsford, Massachusetts (MA) 01863
Attention: Jerry Brecher

Re: SECRECY AGREEMENT

Dear Mr. Brecher:

1. <u>Confidential Information</u>. ETHICON ENDO-SURGERY, INC., a company with offices at 4545 Creek Road, Cincinnati, Ohio (OH) 45242, ("EES") and ENDOEVOLUTION, LLC, a company with offices at 51 Middlesex Street, Suite 104, North Chelmsford, Massachusetts (MA) 01863 ("Signatory"), wish to have discussions regarding EES's non-public business information and plans including strategies, market insights, and projections and Signatory's non-public information related to development and commercialization plans of endoscopic suturing devices (the "Purpose"). In the course of the discussions it may be necessary for the parties to disclose to each other certain information related to the Purpose which the disclosing party considers to be confidential (the "Information"). The term "Information" may include technical information, business information, designs, data, analyses, compilations, studies, and the like. This agreement shall be effective upon the date that the last party signs below.

2. <u>Duty of Recipient</u>. The receiving party agrees to keep the disclosing party's Information in confidence and not to disclose or use the disclosing party's Information (other than for the discussions) without the prior written consent of the disclosing party; provided, however, that nothing herein shall prevent the receiving party from disclosing the disclosing party's Information to directors, officers, employees, consultants or other representatives of the receiving party or the receiving party's affiliates (collectively, a party's "Representatives"), if such persons have a need to know such Information for the discussions and are subject to a confidentiality obligation with respect to such Information. The parties agree that each will be fully responsible for any breach by its Representatives of their confidentiality obligations with respect to such Information.

*ICD Number: 387583 - Secrecy Agreement*

Page 1 of 8

3.     Term. The obligations of Section 2 shall only apply with respect to disclosures made within one year after the effective date. The obligations of Section 2 shall continue for three years after the effective date.

4.     Exceptions. Neither party shall be obligated to maintain in confidence or to refrain from disclosing or using Information or any obvious modification thereof if such information:
   a)     was known to the receiving party prior to being received from the disclosing party as evidenced by the receiving party's written records;
   b)     is or without the fault of the receiving party (or any of its Representatives) becomes part of the public domain;
   c)     is received by the receiving party from a third party having no obligation of confidence to the other party hereto; or
   d)     is developed by or on behalf of the receiving party without reliance on the Information received hereunder as evidenced by the receiving party's written records or other competent evidence.

5.     Compelled Disclosures. In the event the receiving party (or any person to whom it has transmitted the Information received hereunder) is required by law or legal process to disclose any of such Information, the receiving party will (i) where reasonably practicable, provide the other party with prompt notice of such event so that the other party may intervene to protect the confidentiality of the Information and (ii) use reasonable efforts to obtain assurance that confidential treatment will be accorded to the Information to be disclosed.

6.     Format of Information. Only Information either (i) disclosed in writing and indicated to be confidential by a conspicuous marking or (ii) disclosed orally or in other non-written form, indicated to be confidential at the time of disclosure and thereafter summarized in writing and indicated to be confidential by a conspicuous marking and transmitted to the other party within 30 days of such non-written disclosure, shall in each case, be subject to this agreement.

7.     Return of Information. All written and electronic documents containing Information and other confidential material in tangible form received by either party under this agreement shall remain the property of the disclosing party. Upon request of the disclosing party and solely at the expense of the receiving party, all such documents (together with any copies or excerpts thereof) and such other material received hereunder shall promptly be either returned to the disclosing party or destroyed and the destruction confirmed to the disclosing party in writing. Notwithstanding the foregoing, the receiving party may retain a copy of the Information in its files solely for evidentiary purposes. Notwithstanding the return or destruction of the documents and materials, the receiving party will continue to be bound by its obligations under this agreement.

8.     Accuracy of Information. The receiving party understands that although the disclosing party has endeavored to include in the Information, information that it believes to be relevant for the purpose of the recipient's evaluation, neither the disclosing party nor any of its Representatives have made or make any representation or warranty as to the accuracy or completeness of the Information. The receiving party agrees that, except as may otherwise be

provided for in a definitive agreement regarding the proposed business arrangement, and subject to the terms and conditions of such definitive agreement, neither the discloser nor its Representatives shall have any liability to the recipient or any of its Representatives resulting from the use of the Information or any errors therein or omissions therefrom.

9. <u>No Obligation to Pursue Proposed Transaction</u>. Unless and until a definitive agreement between the parties with respect to a proposed business arrangement has been executed and delivered, neither party will be under any legal obligation of any kind whatsoever with respect to such a transaction by virtue of this or any written or oral expression by any of its Representatives, except for the matters specifically agreed to herein.

10. <u>Business Acknowledgement</u>. Each party represents it has authority to disclose Information to the other party. Signatory acknowledges that EES has disclosed to the Signatory that EES and is affiliates presently have internal development programs relating to the subject matter of the Information, or without recourse to the Information disclosed hereunder may undertake such development programs, or may receive information on the same or related subject matter from third parties, and may develop and commercialize products and/or services relating to such subject matter independently or in cooperation with such third parties.

11. <u>Governing Law</u>. The validity and interpretation of this agreement and the legal relations of the parties to it shall be governed by the internal laws of the State of Delaware, except that the interpretation and enforcement of the arbitration provision shall be governed by the Federal Arbitration Act.

12. <u>Dispute Resolution</u>. Any controversy or claim arising out of or relating to this Agreement, including any such controversy or claim involving the parent company, subsidiaries, or affiliates under common control of any Party (a "Dispute"), shall first be submitted to mediation according to the *Commercial Mediation Procedures* of the American Arbitration Association ("AAA") (*see* www.adr.org). Such mediation shall be attended on behalf of each party for at least one session by a senior business person with authority to resolve the Dispute. Any period of limitations that would otherwise expire between the initiation of a mediation and its conclusion shall be extended until 20 days after the conclusion of the mediation.

Any Dispute that cannot be resolved by mediation within 45 days of notice by one party to the other of the existence of a Dispute (unless the parties agree to extend that period) shall be resolved by arbitration in accordance with the *Commercial Arbitration Rules* of the AAA ("AAA Rules"; *see* www.adr.org) and the Federal Arbitration Act, 9 U.S.C. §1 et seq.. The arbitration shall be conducted in Cincinnati, Ohio, by one arbitrator appointed in accordance with the AAA Rules.

The arbitrator shall follow the *ICDR Guidelines for Arbitrators Concerning Exchanges of Information* in managing and ruling on requests for discovery. The arbitrator, by accepting appointment, undertakes to exert her or his best efforts to conduct the process so as to issue an

award within eight months of her or his appointment, but failure to meet that timetable shall not affect the validity of the award.

The arbitrator shall decide the Dispute in accordance with the substantive law of Delaware. The arbitrator may not award punitive or consequential damages, nor may the arbitrator apply any multiplier to any award of actual damages, except as may be required by statute. The award of the arbitrator may be entered in any court of competent jurisdiction.

13. Data Protection. If Signatory either (i) owns or operates facilities in the European Union or (ii) has employees located in the European Union that will provide services or transfer any information that can be used to identify a person ("Personal Information") in connection with this Agreement, or (iii) Signatory will collect, receive or use Personal Information in connection with this Agreement, Signatory will comply with the terms of Attachment A.

14. Entire Agreement & Modifications; Severability; Construction. This document contains the entire agreement between the parties and supersedes all preexisting agreements, whether oral or written, between the parties respecting its subject matter. Modifications or waivers of this agreement shall only be effective if made in writing and signed by both parties. The invalidity of any provision of this agreement will not affect the enforceability of any other provision hereof. The parties have jointly negotiated and drafted this agreement and this agreement shall be interpreted without presumption favoring or disfavoring any party by virtue of authorship of any provision of this agreement. This agreement shall not be assignable, in whole or in part, by either party without the prior consent of the other party, and any such assignment without prior consent shall be void.

This letter agreement may be executed in two counterparts, each of which shall be deemed to be an original, but both of which together shall constitute one and the same instrument.

*(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)*

| ETHICON ENDO-SURGERY, INC. | ENDOEVOLUTION, LLC |
|---|---|
| _K CH_ (signature) | _signature_ |
| Signature | Signature |
| Kendall Dobler | GERALD J. BRECHER |
| Name | Name |
| VP, Front End | PRESIDENT |
| Title | Title |
| 7/14/2011 | 07·18·2011 |
| Date | Date |
| PUR 7/12/11 | |

## Attachment A – Data Protection

I.  For the purposes of this section, the following terms shall have the meanings given below:

"Data Subject" shall mean any person about whom data may be processed in the performance of this Agreement;

"Processing" shall mean the collection, use, disclosure, transfer, storage, deletion, processing (both by computer and manually), combination or other use of personal data as contemplated by applicable privacy and data protection laws;

"Personal Data" shall mean data that identifies or could be used to identify a Data Subject; and

"Supervisory Authority" shall mean a public agency or authority of any country, state, territory, or political subdivision of a country, state or territory, or a person or entity acting under a grant of authority from or under contract with such public agency or authority, that is authorized by law to enforce individual rights with respect to personal data, or to oversee or monitor compliance with privacy and data protection laws, rules and regulations.

II.  Signatory shall:

a) ensure that all Personal Data collected by Signatory are processed only to perform its obligations under this Agreement and as specifically permitted by this Agreement, or as otherwise instructed in writing from time to time by EES. Signatory may not use such Personal Data for any other purpose, including without limitation for its own commercial benefit, unless agreed to in writing by EES;

b) ensure that Personal Data are not disclosed or transferred to any third party without the prior written permission of EES, except (1) as specifically stated in this Agreement, or (2) where such disclosure or transfer is required by any applicable law, regulation or supervisory authority, in which case Signatory shall, wherever possible, notify EES promptly (and in any event within five days of receipt) in writing prior to complying with any such request for disclosure or transfer, and shall comply with all reasonable directions of EES with respect to such disclosure or transfer;

c) ensure that all Personal Data are accurate and, where necessary, kept updated and use commercially reasonable efforts to ensure that any Personal Data which are inaccurate or incomplete are erased or rectified;

d) ensure that all appropriate technical and organizational measures are taken to protect Personal Data against accidental or unlawful destruction or accidental loss or alteration, or

---

*ICD Number: 387583 - Secrecy Agreement*

unauthorized disclosure or access and against all other unlawful forms of processing. Without limiting the foregoing, Signatory will take steps not to keep the Personal Data of any kind on a laptop of any portable computing device unless the data is in encrypted form. In particular, "appropriate technical and organizational measures" must meet or exceed the requirements of the Johnson & Johnson Worldwide Information Asset Protection Policies or provide equivalent protection, as agreed to by the parties;

e) notify EES immediately *(and in any event within 24 hours)* upon learning of any accidental or intentional breaches of the security of the Personal Data, or any unlawful or unauthorized uses or disclosures of Personal Data;

f) ensure that Signatory notifies EES promptly in writing (and in any event within five days of receipt) of any communication received from a Data Subject relating to the Data Subject's rights to access, modify or correct his or her Personal Data and to comply with all reasonable instructions of EES before responding to such communications; and

g) comply with the provisions of this Agreement and the reasonable instructions of EES to return, store or destroy the Personal Data.

III.   Each party shall comply with all applicable laws, rules and regulations with respect to such party's processing of Personal Data under this Agreement. Signatory shall take any other steps reasonably requested by EES to assist EES in complying with any notification or other obligations applicable to EES or its subsidiaries and affiliates under such laws. In the event that this Agreement, or any actions to be taken or contemplated to be taken in performance of this Agreement, do not or would not satisfy either party's obligations under such laws, the parties shall negotiate in good faith upon an appropriate amendment to this Agreement.

IV.   At any time during the term of this Agreement, upon prior request and in a reasonable time and manner, Signatory agrees to make its internal policies and procedures, practices, books, and records relating to the privacy and security of Personal Data and the processing of Personal Data available to EES for assessment.

V.   Without limiting any provision of this Attachment A, Signatory shall limit access to and possession of Personal Data only to those of its personnel and subcontractors whose responsibilities under this Agreement reasonably require such access or possession. Signatory represents, warrants, and covenants that all such persons are, or before receiving access to Personal Data will be, bound by a written agreement containing terms sufficient to give effect to Signatory's obligations under this Agreement. Any duplication, use, disclosure, processing or other act or omission by any person that obtains access to or possession of Personal Data through Signatory that would be a breach of this Agreement if committed by Signatory is deemed a breach of this Agreement by Signatory for which Signatory shall be responsible.

VI.   The respective rights and obligations of each party under this Attachment A shall survive the termination, expiration, or other conclusion of this Agreement.

*ICD Number: 387583 - Secrecy Agreement*

VII.  Signatory agrees to use the results of any diagnostic tests and any samples of bodily fluids, tissue biopsies, and/or other biological materials collected in connection with this Study solely for the purposes identified by EES in the Study Protocol or this Agreement. Without limiting the foregoing, Signatory agrees that such results and samples, whether or not identified to a particular Data Subject, will not be used for any other commercial or research purpose by Signatory.